## NATHAN WAY *v.* MILTON BARNARD.

### *Replevin. Possession. Agency.*

The plaintiff in a replevin suit which was dismissed on account of a defect in the replevin bond, is under no obligation to return the attached property to the defendant except under a judgment directing its return; and while the property remains in the possession of the plaintiff, he has no right to resort to a new action of replevin to establish his title to it.

The defendant, who was a sheriff, attached a horse as the property of one Forsyth, upon a writ in favor of Sartle against Forsyth, and left said horse in the possession of an inn-keeper with direction to deliver him to Forsyth when he was properly receipted for. And the plaintiff then brought an action of replevin against the sheriff for the same horse, which action was dismissed, and the plaintiff then returned the horse to the possession of the inn-keeper without a judgment of the court so to do. *Held,* that this was not, *ipso facto,* such a restoration of the horse to the possession of the defendant, as would make him liable to a new action of replevin by the plaintiff

The defendant in such a case could not be made responsible for the act of the inn-keeper in receiving the horse back, unless he authorized the act or subsequently adopted it; and if the testimony is conflicting upon this point it should be submitted to the jury.

REPLEVIN FOR A HORSE. Plea, the general issue, and trial by jury at the Caledonia County Court, December Term, 1861, POLAND, CH. J., presiding. The following facts appeared which were not controverted. In February, 1860, the defendant who was a deputy sheriff of Orleans county, attached

the horse in question, at Burke, in Caledonia county, upon a writ in favor of John P. Sartle against Frank Forsyth, and left the horse in the possession of Joel Trull an inn-keeper at said Burke, and also left a receipt with said Trull, and directed him to deliver the horse to Forsyth, if he procured the receipt to be signed. The plaintiff had bargained the horse to Forsyth to become his when he paid the price $100, but no part of the price had been paid, and soon after the said attachment by the defendant, the plaintiff prayed out a writ of replevin against the defendant returnable to the June Term of Caledonia County court, and the horse was taken from Trull by the officer serving the writ, and delivered to the plaintiff.

The suit was entered in court at said June Term, when the defendant appeared and moved to dismiss the same for a defect in the replevin bond, and the court dismissed said suit. The plaintiff had exceptions noted on the docket, but no exceptions were ever filed. Within thirty days after the said first action was dismissed, the plaintiff procured another writ of replevin against the defendant, (which was the writ in this case,) and delivered the same to an officer for service. The plaintiff then returned the horse to the possession of Trull at the same place, where the defendant left him, and then he was immediately taken by the officer on a second writ of replevin and again delivered to the plaintiff. The officer on the same day went to Barton and served said writ on the defendant, when the defendant told him he had not got the horse and did not want him. The officer at the same time delivered to the defendant a written notice from the plaintiff that his exceptions in the first case were waived. It also appeared that previous to the June Term of the court when the first suit was entered, judgment was recovered in the suit of *Sartle* v. *Forsyth,* on which the defendant attached the horse, and within thirty days after, execution was duly issued and delivered to the defendant with directions to levy it upon said horse and sell him thereon. The defendant told Sartle, the plaintiff, that he would do so if he was properly indemnified. Sartle then had some correspondence with the owner of the debt, he being only the nominal plaintiff and the attorney, and

informed the defendant that no indemnity would be given him. The defendant then returned his execution *nulla bona.* It did not appear that the plaintiff had any knowledge of what had been done with the suit on which the horse was attached, when the present action was brought. It further appeared that after the first suit was dismissed, and before the second was commenced George C. Cahoon, the plaintiff's attorney, called on the defendant at Barton, in reference to said suits. Mr. Cahoon testified as follows : " I called on Barnard, told him the result of the first suit, that we could file exceptions, or bring another suit. Barnard said the real plaintiff lived at Northfield, and Sartle was away, and he wished to consult them. We agreed to meet again. I went up again to see the defendant to see if it could be settled. Barnard said he was directed to do nothing about it, and Way must take his own course. I told him I was ready to pay the cost, if the matter could be settled without further litigation. The defendant said he would do nothing about it, he was so directed. I distinctly understood the defendant would not relinquish the horse."

In relation to the interview with Mr. Cahoon, the defendant testified : " Cahoon wanted I should consent to go to trial on the old suit which was dismissed, he did not ask me to surrender the horse, if he had I should have told him without consulting Sartle. Execution had been returned long before *non est.* When I saw Cahoon the second time, I told him we would not go to trial on the old suit. I don't recollect as there was anything said between Cahoon and me about the horse, whether I claimed the horse, or whether I would give up the horse. He did not ask me if I would give up the horse. I did not tell him I had returned the execution *non est.* I don't recollect he offered to pay the cost, or that I referred him to Sartle. I did not tell Cahoon that they refused to give me an indemnity for selling the horse, or that the claim on the horse was released."

The defendant insisted that upon these facts and this evidence the plaintiff was not entitled to recover, but the court held otherwise and directed a verdict for the plaintiff for nominal damages. To which direction the defendant excepted.

*Peck and Colby*, for the defendant.

There was no " unlawful taking or detaining" by the defendant for which replevin will lie. No judgment to return was rendered on dismissal of the former action of replevin, and it is only in such event that the plaintiff in replevin is required to return the property to the officer or that it is held liable to the attachments. *Collamer* v. *Page & Fifield*, 35 Vt. 387. Replevin will lie only in cases where trespass *de bonis* will lie, which clearly is not this case. *Marshal* v. *Davis*, 1 Wend. 109. When no decisive judgment is rendered in replevin, or where plaintiff dies pending suit, it is held that the parties stand on their respective title. *Lockwood* v. *Perry*, 9 Met. 440.

*G. C. & G. W. Cahoon*, for the plaintiff, contended that the plaintiff was warranted in returning the property to the person of whom he received it, and thus placed the parties in *statu quo*. According to the American and English cases when the defendant makes a suggestion of title in himself, it is not traversable, and judgment for a return is always given. *Collamer* v. *Fifield & Page*, 35 Vt. 387; *Lowe* v. *Brigham*, 3 Allen 429; *Gould* v. *Barnard*, 3 Mass. 201; *Quincy* v. *Hall*, 1 Pick. 361; *McArthur* v. *Lane*, 15 Maine 245; East. Dig. p. 582, Repl. § 1; Wheaton's Selwyn vol. 2 p. 915; 1 Wm. Saund. p. 195, " E " note; *Moulton* v. *Bird*, 31 Maine 298; *Greeley* v. *Currier*, 39 *ib.* 516. If then when a suggestion is made by the defendant, *it is not traversable,* but the property must be returned, why then can not a party whose process has failed, the property being claimed by the adverse party, return it and commence a new process? *Fleet* v. *Lockwood*, 17 Conn. 240. Such a course would be be in accordance with the proceedings when a suggestion of property is made by the defendant, the process being defective.

KELLOGG, J. The defendant, as deputy sheriff, attached the horse which is the subject of this action as the property of one Forsyth on a writ in favor of Sartle against Forsyth. The plaintiff claims that he, and not Forsyth, was the owner of the horse, and under a previous writ of replevin, he obtained possession of the horse from the defendant. That action was

dismissed on account of a defect in the replevin bond, but there was no judgment for the return of the property to the defendant, although the defendant might have had such a judgment if he had then applied for it. *Collamer* v. *Page et al.*, 35 Vt. 387. At the time when that action was dismissed, the plaintiff had the property in his possession, and was under no obligation or duty to return it to the defendant except under a judgment directing its return. (See Pynchon MS. on Replevin in Story's Pleadings, Oliver's Edition, p. 450–451.) While the property remained in the possession of the plaintiff, he had neither occasion nor right to resort to a new action of replevin to establish his title to it. The fact that the defendant did not ask for a judgment for the return of the property would seem to indicate that he did not intend further to assert any right or claim to it. To support the present action, it must appear affirmatively, that the property subsequently came into the possession of the defendant, and that the defendant asserted a right or claim to it, which was inconsistent with the right claimed by the plaintiff. The returning of the property to the possession of Trull at the same place where it was left by the defendant before it was replevied by the plaintiff under his first writ was not, *ipso facto*, a restoration of the property to the possession of the defendant, because Trull could be made an agent of the defendant to receive possession of the property only by the defendant's own act, and not by any act of the plaintiff. The defendant could not be made responsible for the act of Trull in receiving the property back from the plaintiff unless he authorized the act, or adopted it by a subsequent recognition and approval of it. It was, therefore, a material question on the trial, whether the defendant, at the time of his conversation with Mr. Cahoon, which was after the first action of replevin was dismissed, treated the horse as being in his possession or under his control, or asserted any right or claim to the possession of the horse. In respect to this question, the testimony of the defendant was in conflict with the testimony of Mr. Cahoon. Whether the testimony of Mr. Cahoon shows such an assertion of claim by the defendant to the property

as would justify the commencement ·by the plaintiff of a new action of replevin for it may admit of some doubt ; but if it was sufficient to make a *prima facie* case for the plaintiff, we think that the conflicting testimony of the defendant and Mr. Cahoon on this point should have been submitted to the jury, as the finding of the jury might have been in accordance with the testimony of the defendant.

The judgment of the county court for the plaintiff is reversed, and a new trial granted.